| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **JOSPEH G. DUMOUCHELLE** | ) | |
| **And MELINDA J. ADDUCCI,** | ) | **Case No. 19-54531** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

### FINEMARK NATIONAL BANK & TRUST'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY

Finemark National Bank & Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 345 Cowry Court, Sanibel, Florida 33957 (as described in greater particularity below, the "Property"). In further support of this Motion, Movant respectfully states:

1. On October 11, 2019 (the "Petition Date"), Debtors Joseph G. DuMouchelle ("DuMouchelle") and Melinda J. Adducci ("Adduci" and together with DuMouchelle, "Debtors"), husband and wife, filed their voluntary petition under Chapter 11 of the United States Bankruptcy Code. [Docket No. 1]

Debtors' Mortgaged Property

2. On July 24, 2015, Debtors, husband and wife, executed and delivered that certain promissory note in the principal amount of $574,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit "A"**. Movant is the owner and holder of, and entitled to enforce, the Note.

1

3. On July 24, 2015, Debtors, husband and wife, executed and delivered that certain mortgage securing the Note (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as **Exhibit "B"**. Pursuant to the Mortgage, all obligations of Debtors under and with respect to the Note and the Mortgage are secured by the Property.

4. On or about June 30, 2017, Debtors, husband and wife, transferred ownership of the Property to the DuMouchelle Trust and Adduci Trust, by virtue of that certain Quitclaim Deed recorded in the Official Records of Lee County, Florida at Instrument No. 2017000156439 (the "Quitclaim"). The DuMouchelle Trust and Adducci Trust took title to the Property subject to the Mortgage.

5. Notwithstanding the Quitclaim, Debtors list the Property as their asset. Schedule A/B, Official Form 106A/B, Item 1.1 [Docket No. 18]

6. Debtors have not filed any schedules informing the Court of their intent with respect to the Property.

7. The legal description for the Property referred to as 345 Cowry Court, Sanibel, Florida 33957 is set forth in the Mortgage (See Exhibit "B").

Debtors' Defaults

8. Debtors defaulted under the Note and the Mortgage by failing to pay the entire installment payment due April 1, 2019, and all subsequent payments.

9. On June 12, 2019, Movant provided Debtors the appropriate notice of default required by the Mortgage ("Notice of Default"). A copy the Notice of Default is attached hereto **Exhibit "C"**.

10. On August 21, 2019, Movant filed a complaint (the "Complaint"), commencing an action styled *Finemark National Bank & Trust v. DuMouchelle, et al.*, Case No. 19-CA-5384

in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida – Civil Division (the "State Court Action"), for foreclosure under the Note and Mortgage, at which time Debtors owed Movant the principal sum of $458,161.85, plus interest, late charges, escrow charges, forced–place insurance charges, title search charges, unpaid taxes, and all costs of collection.

11. In addition to the other amounts due Movant reflected in this Motion, Movant has also incurred legal fees and costs. Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

12. The estimated value of the Property is $868,063.00[1]. The basis for such evaluation is the Lee County Property Appraisers justified value composite, a true and correct copy of which is attached as **Exhibit "D"**.

13. Upon information and belief, the number and aggregate amount of encumbrances on the Property, including but not limited to the encumbrances granted to the Movant, exceeds the estimated value of the Property.

<u>Debtors' Inability to Provide Adequate Protection</u>

14. On November 14, 2019, a criminal complaint was unsealed in the matter styled *United States of America v. Joseph Gregory DuMouchelle*, Case No. 2:19-mj-30586 in the United States District Court for the Eastern District of Michigan (the "Criminal Case") in which Debtor DuMouchelle is charged with violating 18 U.S.C. Section 1343, prohibiting wire fraud, in connection with a February 6, 2019 wire transfer of $12,000,000.00 requested and received by Debtor DuMouchelle.

---

[1] Valuation retrieved on December 9, 2019 from Lee County Property Appraiser website.

11407740.2

15. On November 17, 2019, an involuntary chapter 7 petition was filed against Joseph DuMouchelle Fine & Estate Jewellers, L.L.C. (the "DuMouchelle LLC"), commencing Case No. 19-56239 in this Court (the "Involuntary Case").

16. On November 18, 2019, the United States Trustee commenced the Section 341 first meeting of creditors of Debtors (the "341 Meeting"). Beginning soon after the commencement of the 341 Meeting, in response to questions from the U.S. Trustee, and later in response to questions from certain creditors, both Debtors refused to answer questions, both repeatedly invoking their Fifth Amendment privilege.

17. On November 18, 2019, during a recess from the 341 Meeting, the Court conducted the Chapter 11 Status Conference in the above referenced bankruptcy case (the "Status Conference").

18. Immediately after the Status Conference, the 341 Meeting resumed and Debtors continued to invoke their Fifth Amendment privilege, eventually doing so over 100 times. Debtors did, however, (a) state they worked for the DuMouchelle LLC, and (b) admit they had not made any payment to Movant during the period of over one month from the Petition Date to the date of the 341 Meeting.

19. After 6:00 p.m. on November 18, 2019, the U.S. Trustee adjourned the 341 Meeting to December 5, 2019 at 2:30 p.m. On November 20, 2019, the U.S. Trustee filed a motion to convert this case to chapter 7 [Docket No. 33]. On December 3, 2019, Debtor consented to the conversion of this case to a case under chapter 7 [Docket No. 56], and the Court entered its order converting the case to one under chapter 7 [Docket No. 57]. On December 4, 2019, a new 341 meeting was set for January 8, 2020 [Docket No. 58]. On December 5, 2019,

11407740.2

the U.S. Trustee appointed Fred Dery as the interim trustee in this chapter 7 case [Docket No. 60].

20.     On November 20, 2019, Debtors were obligated to file a Monthly Operating Report.  No Monthly Operating Report has been filed.  Nor have Debtors provided Movant any information about any income received, expenses incurred or paid or any other information about their financial affairs after the Petition Date (other than admitting they have not made any payment to Movant after the Petition Date).

21.     On November 20, 2019, an emergency motion was filed seeking the appointment of an interim trustee over the DuMouchelle LLC [Involuntary Case Docket No. 11] (the "Interim Trustee Motion").

22.     On November 27, 2019, hearings resumed on the Interim Trustee Motion in the Involuntary Case, such hearings having commenced on November 25, 2019.  At the conclusion of these November 27, 2019 hearings, the Court granted the Interim Trustee Motion and ordered the U.S. Trustee to appoint an interim trustee over the DuMouchelle LLC.

23.     The U.S. Trustee subsequently appointed  Mark H. Shapiro the interim chapter 7 trustee (the "Interim Trustee") over the DuMouchelle LLC. It is unclear whether the Interim Trustee will operate the DuMouchelle LLC business; if so, whether either Debtor will be employed by the Interim Trustee over the DuMouchelle LLC, or on what terms; and whether, even if that business is operated by the Interim Trustee and Debtors are so employed, either will have any ability to make any payment to Movant, or will do so.

<u>Cause for Stay Relief</u>

24.     Cause exists for relief from the automatic stay for several compelling reasons, including without limitation the following:

(a) Movant's interest in the Property is not adequately protected.

(b) Further, Movant's interest in the collateral is not protected by an adequate equity cushion. Payments are not being made to Movant sufficient to protect Movant's interest, and no payments are in prospect.

(c) Pursuant to 11 U.S.C. §362(d)(2)(A), Debtor has no equity in the Property; and pursuant to 11 U.S.C. §362(d)(2)(B), the Property is not necessary for an effective reorganization.

Notice

25. Parties who do not want the court to grant the relief from stay or want the court to consider their views on the Motion must file a written response or objection with the Court within 14 days, as set forth in the Notice of Finemark National Bank & Trust's Motion for Relief from Automatic Stay attached hereto as **Exhibit "2"**.

**WHEREFORE,** Movant prays that this Court issue an Order[2] terminating or modifying the stay and granting the following:

A. Relief from the stay allowing Movant to proceed under applicable non-bankruptcy law in the State Court Action to complete the foreclosure upon and obtain possession of the Property;

B. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code or the appointment of any trustee;

C. That any Order entered in respect of this Motion be effective immediately notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3); and

D. Such other and further relief as the Court deems just and proper.

---

[2] A proposed Order is attached hereto as **Exhibit "1"**.

11407740.2

Dated: December 9, 2019

Respectfully submitted,

By: */s/ Daniel A DeMarco*
Daniel A DeMarco (Ohio Bar No. 0038920)
(Admitted to Eastern District of Michigan)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone:         (216) 621-0150
Fax:            (216) 241-2824
Email: dademarco@hahnlaw.com

*Attorneys for Finemark National Bank & Trust*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served, this 9th day of December 2019, upon the parties set forth in the Service List attached hereto.

*/s/ Daniel A. DeMarco*
One of the Attorneys for Finemark National Bank & Trust

7

## <u>SERVICE LIST</u>

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Robert N. Bassel**    bbassel@gmail.com, robertbassel@hotmail.com;ecfbassel@gmail.com
- **Leslie K. Berg (UST)**    Leslie.K.Berg@usdoj.gov
- **Howard M. Borin**    hborin@schaferandweiner.com, jburns@schaferandweiner.com;nmack@schaferandweiner.com
- **Fred Dery**    fdery@fredjdery.com, MI39@ecfcbis.com;dcloven@fredjdery.com;fjd@trustesolutions.net
- **David Eisenberg**    deisenberg@maddinhauser.com
- **Earle I. Erman**    eerman@maddinhauser.com
- **Shanna Marie Kaminski**    smkaminski@varnumlaw.com, wrkyles@varnumlaw.com
- **Bryan D. Marcus**    bmarcus.x@gmail.com
- **Deborah S. Rubin**    drubin@jaffelaw.com
- **Glenn S. Walter**    gwalter@honigman.com
- **Daniel J. Weiner**    dweiner@schaferandweiner.com
- **Jay L. Welford**    jwelford@jaffelaw.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Aaron J Scheinfield**
Goldstein, Bershad & Fried, P.C.
4000 Town Center
Suite 1200
Southfield, MI 48075

**Joseph G. DuMouchelle,**
**Individually and as Trustee of**
**The Revocable Living Trust Agreement of**
**Joseph G. DuMouchelle dated March 22, 2002,**
**as amended**
1221 Bowers #2595
Birmingham, MI 48012-7102

8

**Melinda J. Adducci,**
**Individually and as Trustee of**
**The Revocable Living Trust Agreement of**
**Melinda J. Adducci dated March 22, 2002,**
**as amended**
1221 Bowers #2595
Birmingham, MI 48012-7102

**Florida Construction Contracting Corporation**
c/o Peter Merhige, Registered Agent
4001 Warehouse Road
Fort Myers, FL 33916

**Unknown Occupants/Tenants**
345 Cowry Court
Sanibel, FL 33957

**Lee County Tax Collector**
P.O. Box 1609
Fort Myers, FL 33902-1609

9

11407740.2

# EXHIBIT A

*000000000201386-1095507242015*

**FINEMARK**
NATIONAL BANK & TRUST

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $574,000.00 | 07-24-2015 | 08-01-2030 | 201386-1 | A1C3 / M2 | 14971 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Joseph G DuMouchelle
Melinda J Adducci
345 Cowry Court
Sanibel, FL 33957

**Lender:** FINEMARK NATIONAL BANK & TRUST
Riverwalk Office
12681 Creekside Lane
Fort Myers, FL 33919

**Principal Amount: $574,000.00** **Date of Note: July 24, 2015**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to FINEMARK NATIONAL BANK & TRUST ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Seventy-four Thousand & 00/100 Dollars ($574,000.00), together with interest on the unpaid principal balance from July 29, 2015, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 84 monthly consecutive principal and interest payments in the initial amount of $4,209.94 each, beginning September 1, 2015, with interest calculated on the unpaid principal balances using an initial interest rate of 3.875% per annum based on a year of 360 days; 95 monthly consecutive principal and interest payments in the initial amount of $4,209.95 each, beginning September 1, 2022, with interest calculated on the unpaid principal balances using an interest rate based on the the weekly average yield of the United States Treasury Securities adjusted to a constant maturity of one-year as published by the Federal Reserve Board (currently 0.280%), plus a margin of 2.750%, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 3.875% per annum based on a year of 360 days; and one principal and interest payment of $4,209.61 on August 1, 2030, with interest calculated on the unpaid principal balances using an interest rate based on the the weekly average yield of the United States Treasury Securities adjusted to a constant maturity of one-year as published by the Federal Reserve Board (currently 0.280%), plus a margin of 2.750%, adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 3.875% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 84 payments, the interest rate on this loan will be 3.875%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the weekly average yield of the United States Treasury Securities adjusted to a constant maturity of one-year as published by the Federal Reserve Board (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each 12 months. I understand that Lender may make loans based on other rates as well. **The Index currently is 0.280% per annum.** The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section.. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream and will be determined using the most recent Index figure available as of 45 days before the date of the scheduled interest rate change. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 3.875% per annum or more than the lesser of 8.875% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 5.000 percentage points. **Unless waived by Lender, any increase in the interest rate will increase the amounts of my payments.**

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.**

**ADDITIONAL INTEREST RATE ADJUSTMENTS.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding adjustment period.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: FINEMARK NATIONAL BANK & TRUST, Attn: Loan Department, 12681 Creekside Lane Fort Myers, FL 33919.**

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall be increased to [illegible] per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum

interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Lee County, State of Florida.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GARNISHMENT.** I consent to the issuance of a continuing writ of garnishment or attachment against my disposable earnings, in accordance with Section 222.11, Florida Statutes, in order to satisfy, in whole or in part, any money judgment entered in favor of Lender.

**COLLATERAL.** I acknowledge this Note is secured by Second Mortgage on Primary Residence located at 345 Cowry Court, Sanibel, FL 33957.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** I may notify Lender if Lender reports any inaccurate information about my account(s) to a consumer reporting agency. My written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: FINEMARK NATIONAL BANK & TRUST Attn: Loan Department 12681 Creekside Lane Fort Myers, FL 33919.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. I do not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to me. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

# PROMISSORY NOTE
## (Continued)

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Joseph G DuMouchelle

X _____
Melinda J Adducci

---

## Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

---

## Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization: FineMark National Bank & Trust          NMLSR ID: 405478

Individual: Christopher John Catti          NMLSR ID: 739963

LaserPro, Ver. 15.3.0.044 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - FL C:\HFS\CFI\LPL\D20.FC TR-5102 PR-11

# EXHIBIT B

**RECORDATION REQUESTED BY:**
FINEMARK NATIONAL BANK & TRUST
Riverwalk Office
12681 Creekside Lane
Fort Myers, FL 33919

**WHEN RECORDED MAIL TO:**
FINEMARK NATIONAL BANK & TRUST
Riverwalk Office
12681 Creekside Lane
Fort Myers, FL 33919

**SEND TAX NOTICES TO:**
FINEMARK NATIONAL BANK & TRUST
Riverwalk Office
12681 Creekside Lane
Fort Myers, FL 33919

This Mortgage prepared by:

Name: Teresa Cypher, Assistant Vice President
Company: FINEMARK NATIONAL BANK & TRUST
Address: 12681 Creekside Lane, Fort Myers, FL 33919





*#############074607242015*

## MORTGAGE

THIS MORTGAGE dated July 24, 2015, is made and executed between Joseph G DuMoucholle and Melinda J Adducci, Husband and Wife, (referred to below as "Grantor") and FINEMARK NATIONAL BANK & TRUST, whose address is 12681 Creekside Lane, Fort Myers, FL 33919 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in **Lee County, State of Florida:**

> **Lot 5, South Capers Subdivision, according to the Plat thereof, recorded in Plat Book 41, Pages 79 through 81, of the Public Records of Lee County, Florida**

The Real Property or its address is commonly known as **345 Cowry Court, Sanibel, FL 33957.** The Real Property tax identification number is 26-46-22-T3-01800.0050.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $574,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

> **Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and

## MORTGAGE
### (Continued)

Page 2

maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage, or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment,

## MORTGAGE
### (Continued)

Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in

## MORTGAGE
### (Continued)

such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Promises. All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

Existing Lien. The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

No Modification. Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of

# MORTGAGE
## (Continued)

this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such Indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

## MORTGAGE
### (Continued)

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**FUTURE ADVANCES CLAUSE.** The total amount of indebtedness secured hereby may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed this principal sum of two times the original loan amount, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this mortgage, with interest thereon; and this mortgage shall secure any and all additional or further monies which may be advanced by Mortgagee to the Mortgagor after the date hereof, which future advances of money, if made, shall be evidenced by a note or notes executed by the Mortgagor to the Mortgagee bearing such rate of interest and with such maturities as shall be determined from time to time, but any and all such future advances secured by this mortgage shall be made not more than twenty (20) years after the date hereof. Nothing herein contained shall be deemed an obligation on the part of the Mortgagee to make any future advances..

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Florida.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Lee County,

## MORTGAGE
## (Continued)

State of Florida.

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means Joseph G DuMouchelle and Melinda J Adducci and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Joseph G DuMouchelle and Melinda J Adducci.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means FINEMARK NATIONAL BANK & TRUST, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated July 24, 2015, **in the original principal amount of $574,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

# MORTGAGE
## (Continued)

Page 8

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

GRANTOR:

X _____
Joseph G DeMouchelle

X _____
Melinda J Addodd

WITNESSES:

X _____

X _____
    Teena McIph    Chris Catt
                   Tena McIph

**MORTGAGE**
**(Continued)**

Page 9

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Florida___ )
                              ) SS
COUNTY OF ___Lee___ )

The foregoing instrument was acknowledged before me this ___24th___ day of ___July___, 20__15__
by Joseph G DuMouchelle and Melinda J Adducci, who are personally known to me or who have produced ___Driver License___
_____ as identification.

_(signature)_
(Signature of Person Taking Acknowledgment)

Teresa M Cypher
(Name of Acknowledger Typed, Printed or Stamped)

(Title or Rank)

EE 195279
(Serial Number, if any)

TERESA M CYPHER
MY COMMISSION # EE195279
EXPIRES May 02, 2016
(407) 368-0153   FloridaNotaryService.com

---

**Originator Names and Nationwide Mortgage Licensing System and Registry IDs:**

Organization: FineMark National Bank & Trust          NMLSR ID: 405478

Individual: Christopher John Catti                    NMLSR ID: 739963

LaserPro, Ver. 16.3.0.044  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - FL  C:\HFS\CFI\LPL\G03.FC  TR-5102
PR-11

### ADJUSTABLE RATE RIDER - One-Year Treasury Index -- Rate Caps

THIS ADJUSTABLE RATE RIDER is made this July 24, 2015 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FINEMARK NATIONAL BANK & TRUST (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

345 Cowry Court, Sanibel, FL 33957
Property Address

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**INTEREST RATE**

The Note provides for an initial interest rate of 3.875%. The Note provides for changes in the interest rate and the monthly payments as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of August, 2022 and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two & 750/1000 percentage points (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.875% or less than 3.875%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 8.875%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

The Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in the Security Instrument, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the Security Instrument within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any

## ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX -- RATE CAPS
### (Continued)

remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

BORROWER:

X _____
Joseph G DuMouchelle

X _____
Melinda J Adducci

LaserPro, Ver. 15.3.0.014 Copr. D+H USA Corporation 1997, 2015. All Rights Reserved. - FL C:\PS\CFI\LPL\G03.FC TR-8103 PR-11

# EXHIBIT C

HAHN 🔲 LOESER

Robert A. Cooper, Esq.

Phone: 239.337.6700
Fax: 239.337.6701
E-mail: racooper@hahnlaw.com

June 12, 2019

**VIA CERTIFIED MAIL-RETURN RECEIPT
REQUESTED AND REGULAR U.S. MAIL**

Joseph G. DuMouchelle,
Individually and as Trustee of
The Revocable Living Trust Agreement of
Joseph G. DuMouchelle dated March 22, 2002,
as amended
345 Cowry Court
Sanibel, FL 33957

Melinda J. Adducci,
Individually and as Trustee of
The Revocable Living Trust Agreement of
Melinda J. Adducci dated March 22, 2002, as
amended
345 Cowry Court
Sanibel, FL 33957

Re:  Finemark National Bank & Trust Loan Number: 202386-1;
 Mortgage, dated July 24, 2015, securing payment and performance of that certain
 Promissory Note dated July 24, 2015 in the Original Principal Amount of $574,000.00;
 Mortgaged Property Address: 345 Cowry Court, Sanibel, FL 33957;
 **NOTICE OF DEFAULT**

Dear Mr. DuMouchelle and Mrs. Adducci:

This Law Firm represents Finemark National Bank & Trust (the "Lender"). We have been engaged to collect a debt. Any information obtained will be used for that purpose. The Lender is the original party to whom the debt is owed.

Reference is hereby made to the Promissory Note dated July 24, 2015 in the Original Principal Amount of $574,000.00 ("Note"), executed by Joseph G. DuMouchelle and Melinda J. Adducci, husband and wife ("Borrowers" or "You"), payable to the order of the Lender, secured by that certain Mortgage dated July 24, 2015 (the "Mortgage") encumbering 345 Cowry Court, Sanibel, FL 33957 (the "Mortgaged Property").

The purpose of this NOTICE OF DEFAULT letter is to advise You of the following in connection with the Note and Mortgage.

You are in default under the Note and Mortgage by virtue of your failure to make the required payments of principal and accrued interest due on April 1, 2019 (balance of the April 1, 2019 payment is **$1,590.32**), May 1, 2019 (**$4,209.94**), and June 1, 2019 (**$4,209.94**), plus accrued late interest (**$1,578.12**) and late charges (**$210.50**) through June 10, 2019.

11048138.1

HAHN LOESER & PARKS LLP  attorneys at law

cleveland  columbus  naples  fort myers  san diego  chicago

2400 First Street, Suite 300  Fort Myers, Florida  33901  phone 239.337.6700  fax 239.337.6701  hahnlaw.com

In addition, You are in default of the Note and Mortgage for failure to pay the 2018 real property taxes and assessments for the Mortgaged Property, which has resulted in a tax certificate (certificate no. 19-022269). Per the Lee County, Florida, Tax Collector, as of June 7, 2019, the unpaid 2018 real estate taxes and assessments for the Mortgaged Property are **$10,308.18**.

In order to cure these defaults and reinstate the Note and Mortgage, on or before **July 16, 2019**, You are required to pay the Lender the total of all of the following:

1.      Pay the sum of **$11,798.82**, which represents the total amount of principal, interest and late charges due under the Note and Mortgage through June 12, 2019 **PLUS interest at the rate of $49.32 per day from July 13, 2019 until the date full payment is received by the Lender**; and

2.      Pay the sum of **$4,209.94**, which represents installment payment under the Note and Mortgage due July 1, 2019; and

3.      Pay the sum of **$10,308.18 plus all interest and other charges accruing after June 7, 2019 and due to the Lee County, Florida, Tax Collector**, which represents the amount due for the unpaid 2018 real estate taxes and assessments for the Mortgage Property, and submit to Lender written evidence of payment in full of the 2018 real estate taxes and assessments for the Mortgaged Property.

Please forward Your payment and written evidence of payment in full of the 2018 real estate taxes and assessments for the Mortgage Property to Finemark National Bank & Trust, 12681 Creekside Lane, Fort Myers 33919, Attention Jon Powell, Phone: 239-461-3858. **NOTE: post dated checks will not be accepted.**

Your failure to pay the amount stated above and/or to provide Lender with written evidence of payment in full of the 2018 real estate taxes and assessments for the Mortgaged Property before **July 16, 2019** may result in the acceleration of the sums evidenced by the Note and secured by the Mortgage, foreclosure by judicial foreclosure proceeding and the sale of the Mortgaged Property, and/or the possibility of a deficiency judgment against You if the Mortgaged Property is sold at a judicial foreclosure proceeding.

If the defaults are not cured on or before the date specified above, the Lender at its option may require immediate payment in full of all sums evidenced by the Note and secured by the Mortgage without further demand and may foreclose the Mortgage by judicial proceedings. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the Note and Mortgage, including, but not limited to, reasonable attorneys' fees and costs of foreclosure title reports and appraisal of the Mortgaged Property.

11018128.1


You are further notified that you have the right to reinstate the Note and Mortgage subsequent to acceleration and the right to assert in the foreclosure proceedings the non-existence of a default or any other defense you might have against acceleration and foreclosure.

Any restrictive endorsement, designation or instruction, including a statement of accord and satisfaction or tender as full payment, included on a check, instrument or other document accompanying payment is deemed rejected by the Lender regardless of whether the payment is negotiated by the Lender (any such negotiation by the Lender is under protest and with reservation of all rights).

If, within thirty (30) days after receipt of this letter. You notify us that you dispute this debt, or any portion of it, we will obtain verification of the debt and mail a copy of such verification to you. If You do not dispute this debt, or any portion of it, within thirty (30) days after receipt of this letter, we will assume the debt is valid. If you dispute the amount due we would appreciate You submitting any documentation or evidence that You have in support of your contention that the amount due is not correct. Upon request by You, within thirty (30) days after receipt of this letter, we will provide You with the name and address of the original creditor, if different from the current creditor.

If You have any questions regarding this matter, please contact me. Please note that we may only discuss this matter with You. If You wish for us to discuss the matter with someone else, please provide us with written authorization to speak to that person.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Respectfully,

Robert A. Cooper

RAC/mcw

11018138.1

# EXHIBIT D

## Property Data
### STRAP: 25-46-22-T3-01800.0050   Folio ID: 10022141

**✛ Owner Of Record - Tenants in Common**

JOSEPH G DUMOUCHELLE TRUST +
MELINDA J ADDUCCI TRUST
345 COWRY CT
SANIBEL FL 33957

#### Site Address

345 COWRY CT
SANIBEL FL 33957

#### Property Description
**Do not use for legal documents!**

SOUTH CAPERS S/D PB 41 PG 80 LOT 5

#### Classification / DOR Code

SINGLE FAMILY RESIDENTIAL / 01

[ Tax Map Viewer ] [ View Comparables ]



[ Pictometry Aerial Viewer ]

Image of Structure

#### Current Working Values

| | | | |
|---|---|---|---|
| **Just** | 868,063 | As Of | 07/14/2019 |

#### Attributes

| | |
|---|---|
| Land Units Of Measure | UT |
| Units | 1.00 |
| Total Number of Buildings | 1 |
| Total Bedrooms / Bathrooms | 3 / 3.5 |
| Total Living Area | 3,130 |
| 1st Year Building on Tax Roll | 1990 |
| Historic Designation | No |



❮ Photo Date November of 2002 ❯   ⊡ View other photos

Last Inspection Date: 05/18/2018

## Property Value History

| Tax Year | Just | Land | Market Assessed | Capped Assessed | Exemptions | Taxable |
|---|---|---|---|---|---|---|
| 1992 | 479,460 | 180,000 | 479,460 | 479,460 | 0 | 479,460 |
| 1993 | 458,800 | 180,000 | 458,800 | 458,800 | 0 | 458,800 |
| 1994 | 429,320 | 170,000 | 429,320 | 429,320 | 0 | 429,320 |
| 1995 | 426,480 | 170,000 | 426,480 | 426,480 | 0 | 426,480 |
| 1996 | 578,530 | 250,000 | 578,530 | 578,530 | 25,000 | 553,530 |
| 1997 | 458,660 | 135,000 | 458,660 | 458,660 | 25,000 | 433,660 |
| 1998 | 455,050 | 135,000 | 455,050 | 455,050 | 25,000 | 430,050 |
| 1999 | 470,190 | 125,000 | 470,190 | 470,190 | 0 | 470,190 |
| 2000 | 530,800 | 117,000 | 530,800 | 530,800 | 0 | 530,800 |
| 2001 | 639,380 | 140,800 | 639,380 | 639,380 | 0 | 639,380 |
| 2002 | 612,040 | 140,750 | 612,040 | 612,040 | 0 | 612,040 |
| 2003 | 545,110 | 140,000 | 545,110 | 545,110 | 25,000 | 520,110 |
| 2004 | 546,480 | 175,000 | 546,480 | 546,480 | 25,000 | 521,480 |
| 2005 | 560,060 | 270,000 | 560,060 | 560,060 | 25,000 | 535,060 |
| 2006 | 660,020 | 325,000 | 660,020 | 576,860 | 25,000 | 551,860 |
| 2007 | 699,420 | 325,000 | 699,420 | 591,280 | 25,000 | 566,280 |
| 2008 | 654,510 | 325,000 | 654,510 | 609,020 | 50,000 | 559,020 |
| 2009 | 680,170 | 325,000 | 680,170 | 680,170 | 50,000 | 630,170 |
| 2010 | 613,634 | 300,000 | 613,634 | 613,634 | 50,000 | 563,634 |

| Year | | | | | | |
|------|-------|---------|---------|---------|--------|---------|
| 2011 | 640,385 | 300,000 | 640,385 | 551,789 | 50,000 | 501,789 |
| 2012 | 697,238 | 200,000 | 697,238 | 568,343 | 50,000 | 518,343 |
| 2013 | 640,293 | 244,400 | 640,293 | 578,005 | 50,000 | 528,005 |
| 2014 | 762,605 | 184,000 | 762,605 | 590,033 | 50,000 | 540,033 |
| 2015 | 784,897 | 285,200 | 784,897 | 594,753 | 50,000 | 544,753 |
| 2016 | 816,519 | 285,200 | 816,519 | 598,916 | 50,000 | 548,916 |
| 2017 | 896,318 | 285,200 | 896,318 | 611,493 | 50,000 | 561,493 |
| 2018 | 876,938 | 362,200 | 876,938 | 624,334 | 50,000 | 574,334 |
| 2019 | 868,063 | 362,200 | 868,063 | 636,196 | 50,000 | 586,196 |

The **Just** value is the total parcel assessment (less any considerations for the cost of sale). This is the closest value to *Fair Market Value* we produce and is dated as of January 1st of the tax year in question (F.A.C. 12D-1.002).

The **Land** value is the portion of the total parcel assessment attributed to the land.

The **Market Assessed** value is the total parcel assessment (less any considerations for the cost of sale) based upon the assessment standard. Most parcels are assessed based either upon the *Highest and Best Use* standard or the *Present Use* standard (*F.S. 193.011*). For *Agriculturally Classified* parcels (or parts thereof), only agricultural uses are considered in the assessment (*F.S. 193.461 (6) (a)*). The difference between the *Highest and Best Use/Present Use* and the *Agricultural Use* is often referred to as the *Agricultural Exemption.*
(i.e. Market Assessed = Just - Agricultural Exemption)

The **Capped Assessed** value is the *Market Assessment* after any *Save Our Homes* or *10% Assessment Limitation* cap is applied. This assessment cap is applied to all properties and limits year-to-year assessment increases to either the *Consumer Price Index* or 3%, whichever is lower for Homestead properties OR 10% for non-Homestead properties.

The **Exemptions** value is the total amount of all exemptions on the parcel.

The **Taxable** value is the *Capped Assessment* after exemptions (*Homestead, etc.*) are applied to it. This is the value that most taxing authorities use to calculate a parcel's taxes.
(i.e. Taxable = Capped Assessed - Exemptions)

## Exemptions

| Exemption | Amount |
|-----------|--------|
| Homestead Exemption | 25,000.00 |
| Additional Homestead Exemption | 25,000.00 |

## Values (2019 Tax Roll)

| Property Values | | Attributes | |
|-----------------|------|-----------|-----|
| Just | 868,063 | Land Units Of Measure | UT |
| Assessed | 868,063 | Units | 1.00 |
| Portability Applied | 0 | Total Number of Buildings | 1 |
| Cap Assessed | 636,196 | Total Bedrooms / Bathrooms | 3 / 3.5 |
| Taxable | 586,196 | Total Living Area | 3,130 |
| Cap Difference | 231,867 | 1st Year Building on Tax Roll | 1990 |
| | | Historic Designation | No |

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOSPEH G. DUMOUCHELLE | ) | |
| And MELINDA J. ADDUCCI, | ) | Case No. 19-54531 |
| | ) | |
| Debtors. | ) | |
| | ) | |

## ORDER GRANTING FINEMARK NATIONAL BANK & TRUST'S MOTION FOR RELIEF FROM AUTOMATIC STAY [DOC. NO. ___]

**THIS MATTER** came before the Court for consideration pursuant to the December 9, 2019, *Motion for Relief from the Automatic Stay* [Doc. No. __] (the "***Motion***") filed by creditor Finemark National Bank & Trust ("***Finemark***"). The Motion was served on the parties required to be served under F.R. Bankr. P. 4001, the debtors, any trustee, any other parties asserting an interest in the property that is the subject of the motion, and on any other party who has requested notice, informing the parties of their opportunity to respond. No party filed a response within the time permitted. Therefore, the Court deems the matter unopposed.

Accordingly, it is **ORDERED** that:

1. The Motion is hereby **GRANTED** as set forth herein.

2. Unless otherwise defined or stated herein, all capitalized terms used herein shall have the meanings ascribed to them in the Motion.

3. Finemark is granted relief from the automatic stay so that it may proceed under applicable non-bankruptcy laws in the State Court Action to complete the foreclosure upon and obtain possession of the Property.

4. The Order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code or the appointment of any trustee.

5. The fourteen (14) day period in Bankruptcy Rule 4001(a)(3) is waived. The automatic stay shall terminate effective immediately upon entry of this Order.


IT IS SO ORDERED.



Prepared and submitted by:



/s/ Daniel A. DeMarco
Daniel A DeMarco (Ohio Bar No. 0038920)
(Admitted to Eastern District of Michigan)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone:   (216) 621-0150
Fax:            (216) 241-2824
Email: dademarco@hahnlaw.com

*Attorneys for Finemark National Bank & Trust*

11423776.1

# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **JOSPEH G. DUMOUCHELLE** | ) | |
| **And MELINDA J. ADDUCCI,** | ) | **Case No. 19-54531** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## NOTICE OF FINEMARK NATIONAL BANK & TRUST'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

Finemark National Bank & Trust has filed a Motion for Relief from the Automatic Stay (the "Motion") in order to proceed under applicable non-bankruptcy law in a State Court action to complete the foreclosure upon and obtain possession of the Debtors' property known as 345 Cowry Court, Sanibel, Florida 33957.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).

If you do not want the court to grant relief from the automatic stay, or if you want the court to consider your views on the Motion, **within 14 days**, you or your attorney must:

File with the court a written response or an answer, explaining your position at:

> U.S. Bankruptcy Court
> 211 W. Fort Street
> Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

1

11423341.1

You must also mail a copy to:

Daniel A DeMarco, Esq.
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114

If a response or answer is timely filed and served, the clerk will schedule a hearing on the

Motion, and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not

oppose the relief sought in the Motion and may enter an order granting that relief.

Dated: December 9, 2019

Respectfully submitted,

By: */s/ Daniel A DeMarco*
Daniel A DeMarco (Ohio Bar No. 0038920)
(Admitted to Eastern District of Michigan)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone:          (216) 621-0150
Fax:              (216) 241-2824
Email: dademarco@hahnlaw.com

*Attorneys for Finemark National Bank & Trust*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served, this 9th day of December 2019, upon the parties set forth in the Service List attached hereto.

> */s/ Daniel A. DeMarco*
> One of the Attorneys for Finemark National Bank & Trust

11423341.1

<u>**SERVICE LIST**</u>

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Robert N. Bassel**    bbassel@gmail.com, robertbassel@hotmail.com;ecfbassel@gmail.com
- **Leslie K. Berg (UST)**    Leslie.K.Berg@usdoj.gov
- **Howard M. Borin**    hborin@schaferandweiner.com, jburns@schaferandweiner.com;nmack@schaferandweiner.com
- **Fred Dery**    fdery@fredjdery.com, MI39@ecfcbis.com;dcloven@fredjdery.com;fjd@trustesolutions.net
- **David Eisenberg**    deisenberg@maddinhauser.com
- **Earle I. Erman**    eerman@maddinhauser.com
- **Shanna Marie Kaminski**    smkaminski@varnumlaw.com, wrkyles@varnumlaw.com
- **Bryan D. Marcus**    bmarcus.x@gmail.com
- **Deborah S. Rubin**    drubin@jaffelaw.com
- **Glenn S. Walter**    gwalter@honigman.com
- **Daniel J. Weiner**    dweiner@schaferandweiner.com
- **Jay L. Welford**    jwelford@jaffelaw.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Aaron J Scheinfield**
Goldstein, Bershad & Fried, P.C.
4000 Town Center
Suite 1200
Southfield, MI 48075

**Joseph G. DuMouchelle,**
**Individually and as Trustee of**
**The Revocable Living Trust Agreement of**
**Joseph G. DuMouchelle dated March 22, 2002,**
**as amended**
1221 Bowers #2595
Birmingham, MI 48012-7102

11423341.1

**Melinda J. Adducci,**
**Individually and as Trustee of**
**The Revocable Living Trust Agreement of**
**Melinda J. Adducci dated March 22, 2002,**
**as amended**
1221 Bowers #2595
Birmingham, MI 48012-7102

**Florida Construction Contracting Corporation**
c/o Peter Merhige, Registered Agent
4001 Warehouse Road
Fort Myers, FL 33916

**Unknown Occupants/Tenants**
345 Cowry Court
Sanibel, FL 33957

**Lee County Tax Collector**
P.O. Box 1609
Fort Myers, FL 33902-1609

5

11423341.1