**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

**IN THE MATTER OF:**

Joseph G. DuMouchelle, and
Melinda J. Adducci

Bankruptcy Case No. 19-54531
Honorable Phillip J. Shefferly
Chapter 7

Debtors.

**MOTION FOR ENTRY OF ORDER AUTHORIZING TRUSTEE TO SELL
REAL PROPERTY FREE AND CLEAR OF LIENS, TO COMPENSATE
BROKER AT CLOSING, AND FOR ADDITIONAL RELATED RELIEF**

NOW COMES Chapter 7 Trustee Fred J. Dery ("Trustee"), by and through

his counsel Stevenson & Bullock, P.L.C., and files this Motion for Entry of Order

Authorizing Trustee to Sell Real Property Free and Clear of Liens, to Compensate

Broker at Closing, and for Additional Related Relief ("Motion") and requests that

this Court enter an order substantially in the form attached hereto as Exhibit 1.

Trustee, through his counsel, in support of his Motion, states:

**JURISDICTION**

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper under 28 U.S.C. § 1408 and 1409.

3.      Trustee brings this Motion pursuant to 11 U.S.C. §§ 105 and 363 and

E.D. Mich. LBR 9014-1.

## FACTS

4.     On October 11, 2019 (the "Petition Date"), the debtors, Joseph G. DuMouchelle, and Melinda J. Adducci (collectively, the "Debtors"), filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

5.     On December 4, 2019, the bankruptcy case was converted to one under Chapter 7 of the Bankruptcy Code pursuant to the *Order Converting Case to Chapter 7* (the "Conversion Order") [Docket No. 57].

6.     The Trustee is the duly qualified and permanent trustee in this Chapter 7 case and over the bankruptcy estate (the "Estate" or "Bankruptcy Estate").

7.     The Debtors own the real property commonly known as 345 Cowry Court, Sanibel, FL 33957 (the "Real Property").  The legal description of the Real Property is:

The following described Land in the City of Sanibel, County of Lee, State of Florida, described as follows:

Lot 5, South Capers Subdivision according to the plat thereof recorded in Plat Book 41, Pages 79 to 81, inclusive, Public Records of Lee County Florida

Property Tax ID #:        25-46-22-T3-01800.0050

Commonly known as 345 Cowry Court, Sanibel, FL 33957

8.     The Real Property is property of the bankruptcy estate (the "Estate"). 11 U.S.C. § 541(a).

9. The Trustee is charged with the duty to administer assets of the Estate pursuant to 11 U.S.C. § 704.

10. Upon information and belief, the Lee County Treasurer and the City of Sanibel may assert that they are the holders of claims that are secured by the Real Property for unpaid real property taxes. Moreover, Finemark National Bank & Trust asserts that it is the holder of a secured claim against the Real Property.

11. The Trustee has retained John R. Wood Properties as real estate agent and broker (the "Broker") as real estate broker in the above captioned case [Docket No. 96].

12. The Trustee, through Broker, has received the following offer (the "Offer") to purchase the Real Property:

Purchaser:   Jesse Chase (the "Purchaser")

Offer:   $785,000.00

Terms:   Pursuant to the terms and conditions contained in the Purchase Agreement, a copy of which are attached as **Exhibit 6A**.

## **LEGAL AUTHORITY**

13. Section 363 of the Bankruptcy Code specifically authorizes sales of property of the Estate.

14. Specifically, § 363(b) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate […]."

15.     Furthermore, § 363(f) of the Bankruptcy Code provides for the sale of property of the estate "free and clear of any interest in such property of an entity other than the estate," if one of the following conditions is met:

> (1)    applicable non-bankruptcy law permits sale of such property free and clear of such interests;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

16.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any one of the requirements enumerated therein is sufficient for the sale of the Real Property free and clear of all Liens, except with respect to any interests that are liabilities to be assumed under the Purchase Agreement, as amended. *See In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).  Therefore, the Court may approve a sale free and clear of liens even if all lien holders have not consented.

## APPLICATION AND TERMS OF PROPOSED SALE

*A. Authority to Sell Real Property*

17.     The Trustee believes that the proposed sale satisfies §§ 363(f)(1) – (5) of the Bankruptcy Code regarding any liens that encumber the Real Property.

18.     The Real Property will be sold AS IS and WHERE IS, without any representation or warranty, whether express or implied, including, but not limited to, any warranties of merchantability, fitness for a particular purpose, or habitability.

19.     Under the terms of the proposed Order granting this Motion (Exhibit 1), any party holding a lien, other than the Lee County Treasurer, City of Sanibel, and Finemark National Bank & Trust, (consensual or statutory) may not assert a secured claim to the Estate's interest in any sale proceeds from the sale of the Real Property, but will instead have only unsecured (priority and/or general) claim(s) against the Estate for any allowed claim(s) against the Estate. The Trustee is not aware of any other encumbrances against the Real Property.

*B. Authority to Pay Commissions to Broker at Closing*

20.     The Trustee seeks authority to compensate the Broker at closing.

21.     Subject to Court approval, the Broker is to be compensated at closing in the amount of six percent (6%) of the gross proceeds realized from the sale of the Real Property.  If no auction takes place, as discussed below, compensation for

the Broker will be forty-seven thousand one hundred & 00/100 ($47,100.00) dollars; however, in the event of an auction, the Broker shall receive six percent (6%) of the gross proceeds from the sale of the Real Property, pending the filing of an application for compensation.

22.     The compensation requested by the Broker is reasonable, and is for actual and necessary services that absolutely benefitted the Estate. Through the direct efforts of the Broker, the Trustee received the current offer to purchase the Real Property.

23.     The Trustee requests authority to compensate the Broker and to pay broker commissions from the gross proceeds of sale, to be paid at closing.

*C. The Sale is Subject to Higher and Better Offers*

24.     Any party interested in submitting a competing bid on terms at least as favorable as those stated in the Purchase Agreement must provide Broker with (i) a signed purchase agreement on terms at least as favorable as Jesse Chase's offer, but with an opening bid of at least $800,000.00; and (ii) a deposit of at least $25,000.00, paid in good and sufficient funds.

25.     Any competing bids must be submitted to Broker by 5:00 PM EST on the fifth (5th) business day following Court approval.

26.     In the event that any competing bids are timely received, Trustee will conduct a public auction via telephone or virtual meeting. The auction, if any, will be scheduled in the sole discretion of Trustee.

27.     The Trustee shall have sole authority and discretion to (i) determine who qualifies as a bidder based on, *inter alia*, an ability to close and compliance with the order approving this Motion; and (ii) determine the successful bidder at the Auction.

28.     If an auction occurs, bidding will occur in increments of $1,000.00 or such other amount as determined by the Trustee in his sound business judgment.

29.     If an auction occurs and Jesse Chase is not the successful bidder, the deposit shall be returned to Jesse Chase and he shall be entitled to receive and an expense reimbursement not to exceed $2,000.00 of actual costs incurred by Jesse Chase in his due diligence as his sole remedy.

30.     If no other bidders come forward, then no auction will occur and Trustee will close the sale, as contemplated in the Purchase Agreement, with Jesse Chase, or his successor or assignee.

*D. Additional Relief Requested*

31.     The net proceeds from the sale of the Real Property shall be retained by the Trustee, pending further Order of this Court.

32.     Trustee requests that, other than as otherwise ordered by the Court, any party occupying the Real Property shall vacate the Real Property no later than forty-eight (48) hours after entry of an order approving this motion; and (ii) leave the Real Property in broom-clean condition with all fixtures and landscaping intact.

33.     In the event that any party occupying the Real Property fails to timely vacate the Real Property or fail to leave it in broom-clean condition with all fixtures and landscaping intact, Trustee may, without further court action, (i) have an appropriate law enforcement agency evict the party occupying the Real Property; and (ii) make concessions to the buyer or pay out of pocket for the clean-up costs or for any fixtures or landscaping not left intact.  Moreover, the Trustee may petition the Court to seek monetary damages against such non-complying party(ies) in the event that they fail to cooperate with the Trustee's sales efforts.

34.     The Trustee requests that the Court grant the authority to execute any and all documents and agreements and to do such things as may be necessary or appropriate to implement and effectuate the sale.

35.     The Trustee requests that notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014, the Local Rules or otherwise, the terms and conditions of the Order granting this Motion shall be effective immediately upon entry and that the Trustee be authorized to close the sale of the Real Property immediately upon entry of the Order granting this Motion.

36.   The Trustee requests that each and every appropriate federal, state, and local governmental agency or department is ordered and directed to accept transactions contemplated by the Order granting this Motion including, without limitation, filings in the recording offices in Florida and governmental agencies or departments.

## **CONCLUSION**

WHEREFORE, Trustee requests that this Honorable enter the *Order Authorizing Trustee to Sell Real Property Free and Clear of Liens, to Compensate Broker at Closing, and for Additional Related Relief* attached hereto as Exhibit 1 and grant such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Elliot G. Crowder (P76137)
Counsel for Trustee
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ecrowder@sbplclaw.com

Dated: July 7, 2020

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

**IN THE MATTER OF:**

| | |
|---|---|
| Joseph G. DuMouchelle, and Melinda J. Adducci | Bankruptcy Case No. 19-54531 Honorable Phillip J. Shefferly Chapter 7 |
| Debtors. | |

**ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, TO COMPENSATE BROKER AT CLOSING, AND FOR ADDITIONAL RELATED RELIEF**

This case is before the Court on the Chapter 7 Trustee's Motion for Entry of Order Authorizing Trustee to Sell Real Property Free and Clear of Liens, to Compensate Broker at Closing, and for Additional Related Relief (the "Motion"); notice having been provided properly, under Rule 2002 of the Federal Rules of Bankruptcy Procedure; no timely objections having been filed or made to the Motion, the Court being fully advised in the premises; and for the reasons stated by the Court on the record during the hearing,

NOW THEREFORE; IT IS HEREBY ORDERED that:

1. The Motion[1] is granted in all respects.

**Authorization to Sell Real Property**

2. The Trustee is authorized to sell the real property commonly known as 345 Cowry Court, Sanibel, FL 33957 (the "Real Property") as set forth in the

---

[1] Capitalized terms contained herein shall have the same meaning as those in the Motion, unless stated otherwise.

Motion to Jesse Chase or his successor or assignee, or a similarly situated person/entity (the "Purchaser") for seven hundred eighty-five thousand & 00/100 ($785,000.00) dollars pursuant to the terms and conditions contained in the Purchase Agreement and Addendum thereto, attached to the Motion as Exhibit 6A. The legal description of the Real Property is:

The following described Land in the City of Sanibel, County of Lee, State of Florida, described as follows:

Lot 5, South Capers Subdivision according to the plat thereof recorded in Plat Book 41, Pages 79 to 81, inclusive, Public Records of Lee County Florida

Property Tax ID #:          25-46-22-T3-01800.0050

Commonly known as 345 Cowry Court, Sanibel, FL 33957

3.      The Real Property shall be sold AS IS and WHERE IS, without any representation or warranty, whether express or implied, including, but not limited to, any warranties of merchantability, fitness for a particular purpose, or habitability.

4.      Any party holding a lien (consensual or statutory), other than Lee County Treasurer, City of Sanibel, and Finemark National Bank & Trust, may not assert a secured claim to the Estate's interest in any sale proceeds from the sale of the Real Property, but will instead have only unsecured (priority and/or general) claim(s) against the Estate for any allowed claim(s) against the Estate. The claims of the Lee County Treasurer, City of Sanibel, and Finemark National Bank & Trust

shall be paid at closing, or, in the event that there is a dispute between the Trustee and creditor for the liquidated claim, shall attach to the net sale proceeds from the sale of the Real Property.

**The Sale is Subject to Higher and Better Offers**

5.      Any party interested in submitting a competing bid on terms at least as favorable as those stated in the Purchase Agreement must provide Broker with (i) a signed purchase agreement on terms at least as favorable as Purchaser's offer, but with an opening bid of at least $800,000.00; and (ii) a deposit of at least $25,000.00, paid in good and sufficient funds.

6.      Any competing bids must be submitted to Broker by 5:00 PM EST on the fifth (5th) business day following the entry of this Order.

7.      In the event that any competing bids are timely received, Trustee will conduct a public auction via telephone or virtual meeting.  The auction, if any, will be scheduled in the sole discretion of Trustee.

8.      The Trustee shall have sole authority and discretion to (i) determine who qualifies as a bidder based on, *inter alia*, an ability to close and compliance with this Order; and (ii) determine the successful bidder.

9.      If an auction occurs, (i) bidding will occur in increments of $1,000.00, or such other amount as determined by the Trustee in his sound business judgment; (ii) the successful bidder's deposit will be non-refundable, applied toward the

purchase price, and retained as liquidated damages in the event of default; and (iii) if Jesse Chase is not the successful bidder, the deposit shall be returned to Jesse Chase and he shall be entitled to receive and an expense reimbursement not to exceed $2,000.00 of actual costs incurred by Jesse Chase in his due diligence as his sole remedy.

10.    If no other bidders come forward, then no auction will occur and Trustee will close the sale, as contemplated in the Purchase Agreement, with Jesse Chase.

**Authorization to Compensate Broker**

11.    The Broker may be compensated at closing in the amount of six percent (6%) of the gross proceeds realized from the sale of the Real Property.  If no auction takes place, compensation for the Broker will be forty-seven thousand one hundred & 00/100 ($47,100.00) dollars; however, in the event of an auction, the Broker shall receive six percent (6%) of the gross proceeds from the sale of the Real Property, pending the filing of an application for compensation.

12.    The Trustee is authorized to pay or cause to be paid at the closing from the gross proceeds from the sale of the Real Property all of the customary costs of sale and any other expenses or costs (including title company fees and expenses) which are necessary to consummate the sale of the Real Property.

**Additional Relief Authorized**

13.     The net proceeds from the sale of the Real Property shall be retained by the Trustee, pending further Order of this Court.

14.     Unless otherwise ordered by the Court, any party occupying the Real Property shall vacate the Real Property no later than forty-eight (48) hours after entry of this Order; and (ii) leave the Real Property in broom-clean condition with all fixtures and landscaping intact.

15.     In the event that any party occupying the Real Property fails to timely vacate the Real Property or fail to leave it in broom-clean condition with all fixtures and landscaping intact, Trustee may, without further court action, (i) have an appropriate law enforcement agency evict the party occupying the Real Property; and (ii) make concessions to the buyer or pay out of pocket for the clean-up costs or for any fixtures or landscaping not left intact.  Moreover, the Trustee may petition the Court to seek monetary damages against such non-complying party(ies).

16.     The Trustee is authorized to execute any and all documents and agreements and to do such things as may be necessary or appropriate to implement and effectuate the sale.

17.     Each and every appropriate federal, state, and local governmental agency or department is ordered and directed to accept transactions contemplated

by this Order including, without limitation, filings in the recording offices in Florida and governmental agencies or departments.

18.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014, the Local Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry.

19.     This Court shall retain jurisdiction to enforce and interpret this Order.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

**IN THE MATTER OF:**

| | |
|---|---|
| Joseph G. DuMouchelle, and | Bankruptcy Case No. 19-54531 |
| Melinda J. Adducci | Honorable Phillip J. Shefferly |
| Debtors. | Chapter 7 |

## NOTICE OF MOTION FOR ENTRY OF ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, TO COMPENSATE BROKER AT CLOSING, AND FOR ADDITIONAL RELATED RELIEF

PLEASE TAKE NOTICE that Trustee, Fred J. Dery, by and through his counsel, Stevenson & Bullock, P.L.C., has filed a Motion for Entry of Order Authorizing Trustee to Sell Real Property Free and Clear of Liens, to Compensate Broker at Closing, and for Additional Related Relief ("Motion"). Consistent with the Motion, the Trustee seeks approval from the Court to sell the real property commonly known as 345 Cowry Court, Sanibel, FL 33957 to Jesse Chase for the sum of $785,000.00, pursuant to the terms and conditions set forth in the Purchase Agreement, a copy of which is attached to the Motion as Exhibit 6A. The Real Property will be sold free and clear of liens. The Broker will be compensated at closing in the amount of six percent (6%) of the gross sales price. Your rights may be affected. You may wish to review the Motion and discuss it with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you wish to object to the Court granting the relief sought in the Motion, or if you want the Court to otherwise consider your views on the Motion, within twenty-one (21) days of service of the Motion, **or such shorter time as the Court may hereafter order**, you or your attorney must:

1.      File with the Court a written response[2] or an answer, explaining your position at:

United States Bankruptcy Court
211 West Fort Street
Detroit, Michigan 48226

If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above. You must also mail a copy to:

| | |
|---|---|
| Stevenson & Bullock, P.L.C. | Office of the United States Trustee |
| Attn.: Elliot G. Crowder | 211 West Fort Street, Suite 700 |
| 26100 American Drive, Suite 500 | Detroit, Michigan 48226 |
| Southfield, Michigan 48034 | |

If a response or answer is timely filed and served, the clerk may schedule a hearing on the Motion and you will be served with a notice of the date, time, and location of the hearing. If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting the relief sought therein.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder (P76137)
Counsel for Trustee
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Dated: July 7, 2020          Email: ecrowder@sbplclaw.com

---

[2] Response or answer must comply with FED. R. CIV. P. 8(b), (c) and (e).

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

**IN THE MATTER OF:**

Joseph G. DuMouchelle, and
Melinda J. Adducci

Bankruptcy Case No. 19-54531
Honorable Phillip J. Shefferly
Chapter 7

                    Debtors.

## CERTIFICATE OF SERVICE

Elliot Crowder hereby certifies that on July 7, 2020 copies of the **Motion for Entry of Order Authorizing Trustee to Sell Real Property Free and Clear of Liens, to Compensate Broker at Closing, and for Additional Related Relief, Proposed Order, Notice,** and this **Certificate of Service** were served electronically via the ECF System or email and/or by depositing same in a United States Postal Box located in Southfield, Michigan, with postage fully prepaid thereon on:

| Office of the United States Trustee | Any and all occupants<br>345 Cowry Court<br>Sanibel, FL 33957 |
|---|---|
| All ECF participants | |

Elliot Crowder further certifies that on July 7, 2020 a copy of the **Notice** was served by depositing same in a United States Postal Box located in Southfield, Michigan, with postage fully prepaid thereon on all parties appearing on Debtors' matrix obtained from the Court's CM/ECF website on July 7, 2020 and attached hereto.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Elliot G. Crowder (P76137)
Counsel for Trustee
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Dated: July 7, 2020 Email: ecrowder@sbplclaw.com

Label Matrix for local noticing
0645-2
Case 19-54531-pjs
Eastern District of Michigan
Detroit
Tue Jul  7 14:11:03 EDT 2020

1-800 Self-Storage.Com
2477 W Maple Rd
Troy, MI 48084-7124

A- RON Resources, LLC
224 15th Street
Santa Monica, CA 90402-2210

A-RON Resources LLC
c/o Glenn S. Walter/Honigman LLP
660 Woodward Ave., Ste. 2290
Detroit, MI 48226-3506

Aaron Mendelsohn
c/o Honigman LLP
660 Woodward Ave., Ste. 2290
Detroit, MI 48226-3506

Melinda J. Adducci
1221 Bowers
#2595
Birmingham, MI 48012-7102

Ally Bank
P.O. Box 130424
Saint Paul, MN 55113-0004

Ally Bank
PO Box 130424
Roseville, MN 55113-0004

American Express
Customer Care / Bankruptcy
P.O. Box 297812
Fort Lauderdale, FL 33329-7812

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Robert N. Bassel
P.O. Box T
Clinton, MI 49236-0018

Kimberly Bedigian
Stevenson & Bullock, P.L.C.
26100 American Drive
Suite 500
Southfield, MI 48034-6184

Leslie K. Berg (UST)
211 W. Fort Street
Suite 700
Detroit, MI 48226-3263

Howard M. Borin
Schafer and Weiner, PLLC
40950 Woodward Ave.
Ste. 100
Bloomfield Hills, MI 48304-5124

Charles D. Bullock
Stevenson & Bullock, P.L.C.
26100 American Drive
Suite 500
Southfield, MI 48034-6184

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Chrysler Capital
Attn:  Bankruptcy Department
P.O. Box 961278
Fort Worth, TX 76161-0278

Chrysler Capital
P.O. Box 961275
Fort Worth, TX 76161-0275

Credibly
25200 Telegraph Rd
STE 350
Southfield, MI 48033-7416

Elliot G. Crowder
26100 American Drive
Suite 500
Southfield, MI 48034-6184

Daniel A. DeMarco
200 Public Square
Suite 2800
Cleveland, OH 44114-2306

Department Stores National Bank
c/o Quantum3 Group LLC
PO Box 657
Kirkland, WA  98083-0657

Department Stores National Bank (Macy's
Bankruptcy Processing
P.O. Box 8053
Mason, OH 45040-8053

Fred Dery
803 West Big Beaver
Suite 353
Troy, MI 48084-4775

Detroit Athletic Club
31211 JEFFERSON AVE.
ST CLAIR SHORES, MI 48082-1301

Discover
DFS Services, LLC
P.O. Box 3025
New Albany, OH 43054-3025

Discover Bank
Discover Products Inc
Po Box 3025
New Albany OH  43054-3025

Joseph G. DuMouchelle
1221 Bowers
#2595
Birmingham, MI 48012-7102

EZ Storage
18145 Mack Ave
Detroit, MI 48224-1444

East Continental Gems
c/o Cindy Elizabeth Molloy, Esq.
551 Fifth Avenue, 31st Floor
New York, NY 10176-0001

East Continental Gems, Inc.
580 5th Avenue, Ste. 1115
New York, NY 10036-4726

East Continental Gems, Inc.
Attn: Eli Mirzoeff
580 5th Avenue, Suite 1115
New York, NY 10036-4726

David Eisenberg
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Second Floor
Southfield, MI 48034-1839

Earle I. Erman
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Second Floor
Southfield, MI 48034-1839

Finemark National Bank & Trust
Daniel A. DeMarco, Esq.
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, OH 44114-2303

First National Bank & Trust
22 4th Street E.
Williston, ND 58801-5332

Patrick Anthony Foley
18572 W. Outer Drive
Dearborn, MI 48128-1872

Jerome D. Frank
30833 Northwestern Hwy
Ste. 205
Farmington Hills, MI 48334-2582

Matthew W. Frank
30833 Northwestern Hwy.
Suite 205
Farmington Hills, MI 48334-2582

Goldstein, Bershad & Fried, P.C.
4000 Town Center
Suite 1200
Southfield, MI 48075-1413

Marty Harrity
 Frank & Frank, PLLC
30833 Northwestern Hwy.
Suite 205
Farmington Hills, MI 48334-2582

J. Noseda and Son, Inc.
c/o Fraser Trebilcock Davis & Dunlap P.C
One Woodward Ave.
Ste. 1550
Detroit MI 48226-5497

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz & Schneid, P.L.
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

Jeffrey A. Mitchell, Esq.
5 Penn Plaza, 24th Floor
New York, NY 10001-1810

Jonathan Birnbach & J.B. International
576 Fifth Avenue
New York, NY 10036-4807

Joseph Gaylord
Thomas, DeGrood & Witenoff, P.C.
26211 Central Park Blvd., Suite 110
Southfield, MI 48076-4154

Shanna Marie Kaminski
160 W. Fort St.
5th Floor
Detroit, MI 48226-3700

Kevin G. Thomas
Thomas, DeGrood & Witenoff, P.C.
26211 Central Park Blvd., Suite 110
Southfield, MI 48076-4154

Lee County Tax Collector
C/o Legal Department
PO Box 850
Fort Myers  FL  33902-0850

Morris B. Lefkowitz
29777 Telegraph Road
Suite 2440
Southfield, MI 48034-7667

Louis Albert Blake Rizzo
Anne Marie Rizzo
3240 Auten Rd
Ortonville, MI 48462-8859

Bryan D. Marcus
29488 Woodward Ave.
Suite 451
Royal Oak, MI 48073-0903

Nanette D. Poole a/k/a Nanette DuMouchelle P
c/o Stephen J. Francis   (P55473)
Dold, Spath & Kiriazis, PC
17190 Denver Street
Detroit, MI 48224-2235

Nanette Poole
458 Bournemouth Circle
Grosse Pointe Farms, MI 48236-2816

Oakland County Circuit Court
1200 N. Telegraph Road
Pontiac, MI 48341-0404

Office of the United States Trustee
Ohio/Michigan Regional Office
211 West Fort Street
Suite 700
Detroit, Michigan 48226-3263
Attn: Quarterly Fee Coordinator

On Deck Capital, Inc.
1400 Broadway
New York, NY 10018-5300

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Nathan D. Petrusak
12900 Hall Rd.
Suite 350
Sterling Heights, MI 48313-1174

Precious Stones Company
c/o Honigman LLP
2290 First National Bldg.
660 Woodward Ave.

Jay Richter
John R. Wood Properties
1019 Periwinkle Way
Sanibel, FL 33957-6914

Karen L. Rowse-Oberle
24525 Harper Ave.
Suite Two
St. Clair Shores, MI 48080-1286

Deborah S. Rubin
27777 Franklin Road
Suite 2500
Southfield, MI 48034-8214

Tami R. Salzbrenner
30833 Northwestern Hwy.
Suite 205
Farmington Hills, MI 48334-2582

Sanibel Captiva Community Bank
7500 College Parkway
Fort Myers, FL 33907-5500

Aaron J Scheinfield
Goldstein, Bershad & Fried, P.C.
4000 Town Center
Suite 1200
Southfield, MI 48075-1413

Aaron J. Scheinfield
Goldstein Bershad & Fried PC
4000 Town Center
Suite 1200
Southfield, MI 48075-1413

Craig S. Schoenherr Sr.
12900 Hall Road
Suite 350
Sterling Heights, MI 48313-1174

Mark H. Shapiro
25925 Telegraph Rd.
Suite 203
Southfield, MI 48033-2527

Simply Self Storage
20355 E 9 Mile Rd
Saint Clair Shores, MI 48080-1757

Synchrony Bank (Lowe's)
Bankruptcy Department
P.O. Box 965060
Orlando, FL 32896-5060

Teodor Gelov
c/o Jaffe Raitt Heuer & Weiss PC
Jay Welford, Esq.
27777 Franklin Rd Ste 2500
Southfield, MI 48034-8222

Thomas T. Ritter
c/o Bryan D. Marcus, Esq.
29488 Woodward Ave., Suite 451
Royal Oak, MI 48073-0903

Tina M. Runyan
31211 JEFFERSON AVE.
ST CLAIR SHORES, MI 48082-1301

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Verizon
by American InfoSource as agent
PO Box 4457
Houston, TX 77210-4457

Glenn S. Walter
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506

Jonathan T. Walton Jr.
One Woodward Avenue
Suite 1550
Detroit, MI 48226-5497

Daniel J. Weiner
40950 Woodward Ave.
Suite 100
Bloomfield Hills, MI 48304-5124

Jay L. Welford
27777 Franklin Rd.
Suite 2500
Southfield, MI 48034-8214

William Noble Rare Jewels, LP
100 Highland Park Village
Dallas, TX 75205-2784

William Noble Rare Jewels, LP
Attn: William Noble
100 Highland Park Village, Ste. 200
Dallas, TX 75205-2720

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Chase
P. O. Box 15298
Wilmington, DE 19850-5298

US Bank
P.O. Box 5229
Cincinnati, OH 45201-5229

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Joy Augustine | (u)Robert N. Bassel | (u)Jonathan Birnbach |
| (u)Charles D. Bullock | (u)Finemark National Bank & Trust | (u)Teodor Gelov |
| (u)J. Noseda and Son, Inc. | (u)J.B. International | (du)J.B. International, LLC |
| (u)John Ragard | (du)Jonathan Birnbach | (d)Marty Harrity<br>Frank & Frank, PLLC<br>30833 Northwestern Hwy., Suite 205<br>Farmington Hills, MI 48334-2582 |
| (u)Marty Harvity | (u)Aaron Mendelsohn | (du)John Ragard |
| (u)Thomas Ritter | (u)Sanibel Captiva Community Bank | (u)Santander Consumer USA, Inc. |
| (u)Mark Shapiro | (u)Thomas Ritter<br>c/o Attorneys - Bryan Marcus P47125 | (u)Andrew R. Vara |

End of Label Matrix
Mailable recipients    81
Bypassed recipients    21
Total                 102

# **EXHIBIT 6A**

# "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1\*  PARTIES: _____FRED J DERY, CHAPTER 7 TRUSTEE_____ ("Seller"),
2\*  and _____JESSE CHASE_____ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5   and any riders and addenda ("Contract"):

6   **1. PROPERTY DESCRIPTION:**
7\*      (a) Street address, city, zip: _____345 COWRY CT, SANIBEL, FL 33957_____
8\*      (b) Located in: _____LEE_____ County, Florida. Property Tax ID #: ____25-46-22-T3-01800.0050____
9\*      (c) Real Property: The legal description is 345 COWRY CT - SOUTH CAPERS S/D PB 41 PG 80 LOT 5
10
11
12          together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13          attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14          by other terms of this Contract.
15      (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16          which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17          purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18          drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19          and other access devices, and storm shutters/panels ("Personal Property").
20\*         Other Personal Property items included in this purchase are:_____
21          _____
22          Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23\*     (e) The following items are excluded from the purchase:_____
24          _____

25                               PURCHASE PRICE AND CLOSING

26\*  **2. PURCHASE PRICE (U.S. currency):**.................................................................$ ____785,000.00____
27\*      (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) .......$ ____10,000.00____
28          The initial deposit made payable and delivered to "Escrow Agent" named below
29\*         (CHECK ONE): (i) ☐ accompanies offer or (ii) ☒ _____ 3
30          blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31          OPTION (II) SHALL BE DEEMED SELECTED.
32\*         Escrow Agent Information: Name: _____CONROY, CONROY & DURANT, PA_____
33\*         Address:_____2210 VANDERBILT BEACH RD, STE 1201, NAPLES, FL 34109_____
34\*         Phone: ____239-649-5200____ E-mail:_____ Fax:_____
35\*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36\*         days after Effective Date ..............................................................................$ ____0.00____
37          (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38\*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.........$ ____628,000.00____
39\*     (d) Other:_____WITHIN 5 DAYS OF AN ACCEPTED HOME INSPECTION_____.................$ ____15,000.00____
40      (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41\*         transfer or other COLLECTED funds ..................................................................$ ____132,000.00____
42          NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43   **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44      (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*         _____JULY 1, 2020_____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46          Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47          the counter-offer is delivered.
48      (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49          initialed and delivered this offer or final counter-offer ("Effective Date").
50   **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51      and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52\*     ("Closing") on ____SEE PARAGRAPH 20 OF CONTRACT____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _JC_           Page 1 of 12          Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

5. **EXTENSION OF CLOSING DATE:**
   (a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.
   (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

6. **OCCUPANCY AND POSSESSION:**
   (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.
   (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

7. **ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

**FINANCING**

8. **FINANCING:**
   ☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.
   ☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within 14 days (if left blank, then 30) days after Effective Date ("Loan Approval Period") for (CHECK ONE): ☒ ☐ adjustable; ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of 30 yrs (if left blank, then 30) years ("Financing").
      (i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

   Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

      (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.
      (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.
      (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:
         (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
         (2) terminate this Contract.

Buyer's Initials 7C      Page 2 of 12      Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

19-54531-pjs    Doc 226    Filed 07/07/20    Entered 07/07/20 14:55:25    Page 25 of 52

109     (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112 by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113     (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115 from all further obligations under this Contract.

116     (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118 default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119 have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120 of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121 Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122 Contract.

123* ☐ (c) Assumption of existing mortgage (see rider for terms).
124* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125 **CLOSING COSTS, FEES AND CHARGES**

126 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127 **(a) COSTS TO BE PAID BY SELLER:**
128 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
129 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
130 • Title search charges (if Paragraph 9(c)(iii) is checked)    • Seller's attorneys' fees
131* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
132     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133     a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134     Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135     such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

136 **(b) COSTS TO BE PAID BY BUYER:**
137 • Taxes and recording fees on notes and mortgages    • Loan expenses
138 • Recording fees for deed and financing statements    • Appraisal fees
139 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
140 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
141 • Lender's title policy and endorsements    • All property related insurance
142 • HOA/Condominium Association application/transfer fees    • Owner's Title Premium (if Paragraph
143 • Municipal lien search (if Paragraph 9(c)(ii) is checked)      9 (c)(iii) is checked.)
144* • Other:_____
145* **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150 copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156 liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157 **(CHECK ONE):**
158* ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161 provider(s) as Buyer may select; or
162* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163 services related to Buyer's lender's policy, endorsements and loan closing; or

☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments **(CHECK ONE):**

☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed. If Seller identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within __20__ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial rating.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

19-54531-pjs    Doc 226    Filed 07/07/20    Entered 07/07/20 14:55:25    Page 27 of 52

(f) LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

(i) FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"): Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. ~~Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.~~

## PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __14__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

FloridaRealtors/FloridaBar-ASIS-5x Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

219 *JC* (f) LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint disclosure is
220 mandatory.
221 Jul 7, 2020 (g) HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
222 CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'
223 ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.
224 (h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
225 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
226 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
227 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
228 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
229 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
230 (i) FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"): Seller shall inform Buyer in writing if
231 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
232 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
233 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
234 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
235 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
236 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
237 FIRPTA.
238 (j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are
239 not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
240 sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
241 *JC* implied, as to the physical condition or history of the Property. ~~Except as otherwise disclosed in writing Seller~~
242 ~~has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected~~
243 ~~building, environmental or safety code violation.~~
Jul 7, 2020
244 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

245 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
246 Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
247 IS Maintenance Requirement").

248 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
249* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __14__ (if left blank, then 15)*
250 *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
251 *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
252 *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
253 *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
254 *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
255 *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
256 *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
257 *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
258 *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
259 *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
260 *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
261 *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
262 *repairs and improvements required by Buyer's lender.*
263 (b) WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior
264 to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
265 follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
266 Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS
267 Maintenance Requirement and has met all other contractual obligations.
268 (c) SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's inspection
269 of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans,
270 written documentation or other information in Seller's possession, knowledge, or control relating to
271 improvements to the Property which are the subject of such open or needed Permits, and shall promptly
272 cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve
273 such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.
277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

280 *Trustee*

## ESCROW AGENT AND BROKER

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida ~~and, subject to COLLECTION, disburse them in accordance with terms and conditions~~
284 ~~of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting~~
285 ~~demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may~~
286 ~~take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or~~
287 ~~liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until~~
288 ~~the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine~~
289 ~~the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the~~
290 ~~dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon~~
291 ~~notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the~~
292 ~~extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will~~
293 ~~comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through~~
294 ~~mediation, arbitration, interpleader or an escrow disbursement order.~~
295 ~~In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,~~
296 ~~or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable~~
297 ~~attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent~~
298 ~~shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to~~
299 ~~Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or~~
300 ~~termination of this Contract.~~

301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

324 **15. DEFAULT:**
325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

274       consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275       or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276       expend, any money.

277    (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278       cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279       to Buyer.

*Trustee*

280                             **ESCROW AGENT AND BROKER**

281  **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282     and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283     with~~in the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions~~
284     ~~of this Contr~~act. ~~Failure of funds to become COLLECTED shall not excuse Buyer's performance.~~ When conflicting
285     ~~demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may~~
286     ~~take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or~~
287     ~~liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until~~ *JC*
288     ~~the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine~~
289     ~~the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the~~
290 Jul 7, 20~~2dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon~~
291     ~~notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the~~
292     ~~extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will~~
293     ~~comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through~~
294     ~~mediation, arbitration, interpleader or an escrow disbursement order.~~
295     ~~In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,~~
296     ~~or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable~~
297     ~~attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent~~
298     ~~shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to~~
299     ~~Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or~~
300     ~~termination of this Contract.~~

301  **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303     professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304     and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305     Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306     public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307     **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308     **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309     **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310     individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311     employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312     all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313     or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314     information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315     failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316     beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317     recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318     provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319     Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320     paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321     Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322     will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323                      **DEFAULT AND DISPUTE RESOLUTION**

324  **15. DEFAULT:**
325    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326       including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327       for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328       in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

19-54531-pjs   Doc 226   Filed 07/07/20   Entered 07/07/20 14:55:25   Page 31 of 52

*including specific perf*

this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. ~~The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.~~

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit~~without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.~~ *as his sole remedy.*

This Paragraph 15 shall survive Closing or termination of this Contract.

16. **DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled ~~as follows.~~ *by the US Bankruptcy Court for the Eastern District of Michigan.*

(a) ~~Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).~~

(b) ~~Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16~~ *may* ~~be~~ resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

17. **ATTORNEY'S FEES; COSTS:** ~~The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation.~~ In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

18. **STANDARDS:**
   A. **TITLE:**
   (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.
   (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Seller fails to so notify Buyer, Seller shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,


*including specific performance*

this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. ~~The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.~~

*JC* **(b) SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit ~~without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16,~~ *Jul 7, 2020* ~~may seek to recover such damages or seek specific performance~~ *as his sole remedy.*

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled *JC* ~~as follows:~~ *by the US Bankruptcy Court for the Eastern District of Michigan.*

~~(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to~~ *Jul 7, 2020* ~~resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).~~

~~(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida *JC* Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16~~ *may be* resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** ~~The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation.~~ *JC* In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

*Jul 7, 2020*

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

**18. STANDARDS:**

**A. TITLE:**

**(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

**(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

383 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388 further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
389 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390 thereby releasing Buyer and Seller from all further obligations under this Contract.
391 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398 preparation of such prior survey, to the extent the affirmations therein are true and correct.
399 **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401 **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411 thereunder.
412 **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
417 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419 paid or will be paid at Closing.
420 **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424 is located) of the next business day.
425 **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435 further obligations under this Contract.
436 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by ~~statutory warranty,~~ trustee's,
437 ~~personal representative's, or guardian's~~ deed, as appropriate to the status of Seller, subject only to matters
438 described in STANDARD A and those accepted by Buyer. ~~Personal Property shall, at request of Buyer, be~~

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by ~~statutory warranty,~~ trustee's, ~~personal representative's, or guardian's~~ deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. ~~Personal Property shall, at request of Buyer, be~~

*JC*

Jul 7, 2020

FloridaRealtors/FloridaBar-ASIS-5x     Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

19-54531-pjs     Doc 226     Filed 07/07/20     Entered 07/07/20 14:55:25     Page 35 of 52

439 ~~transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this~~
440 ~~Contract.~~

441 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

442 (i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.

447 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.

452 (iii) **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**

457 (iv) **PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION** of all
460 closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

461 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

472 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.

489 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.

492 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

*JC*

439 ~~transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this~~
440 Jul 7, 2020 ~~Contract.~~

441 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 (i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 (iii) **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.
489 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O.** ~~CONTRACT NOT RECORDABLE;~~ **PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** ~~Neither this Contract nor any notice of it shall be recorded in any public records.~~ This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED"** means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

**T.** RESERVED.

**U.** ~~APPLICABLE LAW AND VENUE: This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.~~

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials _TC_ ___  Page 10 of 12  Seller's Initials _AV_ ___
FloridaRealtors/FloridaBar-ASIS-5x  Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

19-54531-pjs   Doc 226   Filed 07/07/20   Entered 07/07/20 14:55:25   Page 38 of 52

cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O.** ~~CONTRACT NOT RECORDABLE;~~ **PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** ~~Neither this Contract nor any notice of it shall be recorded in any public records.~~ This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

*JC*

*Jul 7, 20...*

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

**T. RESERVED.**

**U.** ~~APPLICABLE LAW AND VENUE: This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.~~

*JC*

*Jul 7, 20...*

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

568 ## ADDENDA AND ADDITIONAL TERMS

569 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract (Check if applicable):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☐ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing |     Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ CC. Miami-Dade County |
| | |     Special Taxing District |
| | |     Disclosure |
| | | ☐ Other:_____ |

571 * **20. ADDITIONAL TERMS:** <u>CLOSING DATE TO BE THE DATE THE CHAPTER 7 BANKRUPTCY COURT AND LENDER</u>
572 <u>AGREE TO, NOT TO EXCEED 60 DAYS</u>
573
574 <u>BUYERS TO PROVIDE PROOF OF FUNDS OR PREAPPROVAL FROM A LOCAL LENDER, PRIOR TO HOME</u>
575 <u>INSPECTION.</u>
576 <u>THE HOME INSPECTION TO BE PERFORMED BY A FLORIDA LICENSED INSPECTOR</u>
577 <u>BUYER TO PROVIDE A COPY OF THE HOME INSPECTION IF THE SELLER REQUESTS</u>
578 <u>BUYER TO PROVIDE A COPY OF THE APPRAISAL IF THE SELLER REQUESTS.</u>
579
580 *The Addendum to "As Is" Residential Contract for sale and Purchase*
581 *Agreement shall be incorporated as if set forth fully herein. In the*
582 *event of disagreement between this Agreement and the addendum, the*
583 *Addendum shall control.*
584
585
586
587

588 ## COUNTER-OFFER/REJECTION

589 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591 * ☐ Seller rejects Buyer's offer.

Buyer's Initials _JC_     Page 11 of 12     Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

553 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558 disbursement in accordance with the final determination of the IRS, as applicable.
559 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560 8288 and 8288-A, as filed.
561 **W. RESERVED**
562 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563 *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567 *Closing.*

## ADDENDA AND ADDITIONAL TERMS

569 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570 Contract **(Check if applicable):**

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☐ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ CC. Miami-Dade County |
| | | Special Taxing District |
| | | Disclosure |
| | | ☐ Other:_____ |
| | | _____ |
| | | _____ |

571 * **20. ADDITIONAL TERMS:** CLOSING DATE TO BE THE DATE THE CHAPTER 7 BANKRUPTCY COURT AND LENDER
572 AGREE TO.   NOT TO EXCEED 60 DAYS
573
574 BUYERS TO PROVIDE PROOF OF FUNDS OR PREAPPROVAL FROM A LOCAL LENDER, PRIOR TO HOME
575 INSPECTION.
576 THE HOME INSPECTION TO BE PERFORMED BY A FLORIDA LICENSED INSPECTOR
577 BUYER TO PROVIDE A COPY OF THE HOME INSPECTION IF THE SELLER REQUESTS
578 BUYER TO PROVIDE A COPY OF THE APPRAISAL IF THE SELLER REQUESTS.
579
580 *JC*  The Addendum to "As Is" Residential Contract for Sale and Purchase
581 Agreement shall be incorporated as if set forth fully herein. In the
582 event of disagreement between this Agreement and the Addendum, the
583 Jul 7, 2020 Addendum shall control.
584
585
586
587

## COUNTER-OFFER/REJECTION

589 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590 deliver a copy of the acceptance to Seller).
591 * ☐ Seller rejects Buyer's offer.

Buyer's Initials _JC_____        Page 11 of 12        Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

592 THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE
593 ADVICE OF AN ATTORNEY PRIOR TO SIGNING.

594 THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

595 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596 *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597 *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598 *interested persons.*

599 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600 TO BE COMPLETED.

601* Buyer: _JESSE CHASE_     Date: _Jun 30, 2020_

602* Buyer: _____     Date: _____

603* Seller: _____     Date: _7/2/20_

604* Seller: _____     Date: _____

605 Buyer's address for purposes of notice     Seller's address for purposes of notice
606* _____     _____
607* _____     _____
608* _____     _____

609 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610 entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611 Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614 made by Seller or Listing Broker to Cooperating Brokers.

615* _____     JEAN WILLIAMSON
616 Cooperating Sales Associate, if any     **Listing Sales Associate**

617* _____     JOHN R WOOD PROPERTIES
618 Cooperating Broker, if any     **Listing Broker**

Buyer's Initials _JC_     Page 12 of 12     Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.



## Brokerage Relationship Disclosure
FLORIDA ASSOCIATION OF REALTORS

### TRANSACTION BROKER NOTICE

As a transaction broker, _____ **JEAN WILLIAMOSN** _____ and its
associates, provides to you a limited form of representation that includes the following duties:

1. Dealing honestly and fairly;

2. Accounting for all funds;

3. Using skill, care, and diligence in the transaction;

4. Disclosing all known facts that materially affect the value of residential real property and are not readily observable to the buyer;

5. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing;

6. Limited confidentiality, unless waived in writing by a party. This limited confidentiality will prevent disclosure that the seller will accept a price less than the asking or listed price, that the buyer will pay a price greater than the price submitted in a written offer, of the motivation of any party for selling or buying property, that a seller or buyer will agree to financing terms other than those offered, or of any other information requested by a party to remain confidential; and

7. Any additional duties that are entered into by this or by separate written agreement.

Limited representation means that a buyer or seller is not responsible for the acts of the licensee. Additionally, parties are giving up their rights to the undivided loyalty of the licensee. This aspect of limited representation allows a licensee to facilitate a real estate transaction by assisting both the buyer and the seller, but a licensee will not work to represent one party to the detriment of the other party when acting as a transaction broker to both parties.

*Jesse Chase*

Jul 7, 2020

_____          _____          _____
Date                                      Signature                              Signature

_____
Copy returned to **Customer** on the _____ day of _____, _____ by: ❏ personal delivery ❏ mail ❏ E-mail ❏ facsimile.
_____

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

BRD-6tb   Rev. 7/06   © 2006   Florida Association of REALTORS®   All Rights Reserved



*"Bring Your Highest Expectations"*

### Audio–Video Disclosure to Buyers

Federal and Florida laws may require the disclosure of, and consent to, audio and video recordings. Throughout the home buying process, you will view homes in which video cameras and/or audio devices <u>may</u> have been installed. John R. Wood Properties and its Agents ("JRW") do not independently verify whether the homes you will be viewing have Cameras present, or whether the owner of the home complies with the Recording Laws.

By electing to enter such homes, Buyer agrees that JRW has fulfilled all legal disclosure requirements to Buyer.

_JESSE CHASE_
_____
Buyer signature

_____
Date

_____
Buyer signature

_____
Date

JRW Agent: (print name)_____ JEAN WILLIAMSON _____



### RECOMMENDATIONS & DISCLOSURES

For purposes herein, "John R. Wood Properties" includes its managers, officers, directors, members, employees, agents, independent contractors, and any related entities.

Customer acknowledges that John R. Wood Properties and _____ JEAN WILLIAMSON _____ (Agents) have recommended and disclosed the following:

#### RECOMMENDATIONS

1. The Customer should have professional home inspections including but not limited to:

   - Structure, foundation, & roof
   - Pool and grounds
   - Open Permits
   - Square Footage
   - Appliances/Equipment
   - Seawall

   - Well water system
   - Septic System
   - Lead based paint
   - Drywall
   - Electrical/Mechanical Components
   - Heating/Air-conditioning

   - Radon
   - Mold
   - Polybutylene piping
   - Air Quality
   - Wood destroying organisms (WDO's)

2. The Customer should obtain a professional survey.

3. If a Seller, the Customer should complete a Seller's disclosure to the best of their knowledge.

4. If a Buyer, the Customer should request a Seller's disclosure be provided as part of the contract.

5. The Customer should satisfy themselves as to the insurability of the property with respect to: flood zones; the existence of polybutylene plumbing; any other factor affecting the availability of insurance. We recommend flood insurance for all properties in SWFL. Be aware that the price of such insurance may vary from the amount the current owner pays.

6. The Customer should obtain a home warranty.

7. If concerned about valuation, the Customer should obtain an appraisal.

8. The Customer should review Builder Restrictions on resales and/or purchases by Investors, to ensure that Builder Restrictions do not interfere with their planned use for the property. This typically applies in a condominium but may sometimes apply to single-family or villa type properties.

9. The Customer should review rental, architectural, visitor, vehicular, pet and other HOA/Condo/Co-op rules or deed restrictions and ensure that these do not interfere with their planned use for the property.

10. The Customer should contact city, county or federal agencies that control building, zoning and other regulations, if needed, to verify any issues of concern.

#### DISCLOSURES

11. Floor plans provided, if any, are not produced by the Seller or John R. Wood Properties, and neither makes a representation or warranty as to the accuracy of such measurements. Any floor plan provided is the product of an independent third party, whether that be a previous developer, architect, county appraiser, or floor plan service. As such, the measurements should be considered as estimates of actual square footage.

12. School boundaries and zones are adjusted from time to time. The Customer should verify that school boundaries or zones meet their family's needs.

13. Listing information and any information obtained on the internet is deemed reliable but is not guaranteed. Customers are advised to perform due diligence to verify the accuracy of any information.

\\DC01\users\ADMIN\JEM\WINDOCS\FORMS\Recommendations & Disclosures - Island Palm Region - 10-10-19.doc



**RECOMMENDATIONS & DISCLOSURES**

14. Florida law provides for the public search of sexual offenders in any property's neighborhood on the Sexual Offender website, http://offender.fdle.state.fl.us/offender/homepage.do.

15. John R. Wood Properties, its agents and employees are licensed to practice real estate. They are not attorneys, accountants, building inspectors, or any other profession or trade professionals. The Customer should obtain legal and accountant counsel, and/or licensed trade professionals' advice, reviews, and recommendations as deemed necessary.

16. John R. Wood Properties, its agents and employees may, upon Customer request, provide one or more lists of property related or other vendors. These lists are provided as an accommodation to Customers and do not constitute an endorsement of the professionals listed. Customers are advised to satisfy themselves as to the reputation, bonding, and licensing of vendors.

17. The Customer should only accept wiring instructions that come directly from the closing agent or entity holding the deposits and not from John R. Wood Properties or other sources. To ensure the financial security of any funds wired, the Customer should verify the source and accuracy of any communication for wiring instructions by calling the closing agent. JOHN R. WOOD PROPERTIES ASSUMES NO RESPONSIBILITY FOR ANY WIRE TRANSFER INSTRUCTIONS THAT CUSTOMER MAY RECEIVE.

**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE**

Customer is hereby notified that John R. Wood Properties has no ownership but has preferred business relationships with:

- Conroy, Conroy and Durant, P.A. (title insurance and closing services)
- Superior Title (title insurance and closing services)
- New Rez Mortgage (mortgage lending)
- Sanibel Captiva Community Bank (mortgage lending)
- Huff Insurance/Acentria Agency
- Maughan Legal Services
- Home Tech Warranty (home warranty services)

John R. Wood Properties routinely refers business to these entities as a preferred provider, and receives financial benefits from the relationship.

**YOU ARE NOT REQUIRED TO USE CONROY, CONROY, AND DURANT, P.A., NEW REZ MORTGAGE, OR THE OTHER SERVICE PROVIDERS LISTED ABOVE AS A CONDITION FOR SETTLEMENT ON THE SUBJECT PROPERTY. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND AND DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

ACKNOWLEDGEMENT: We have read these recommendations and disclosures.

| | |
|---|---|
| JESSE CHASE | |
| Print Name | Print Name |

| | | |
|---|---|---|
| *Jesse Chase* | Jun 30, 2020 | |
| Signature | Date | Signature    Date |

\\DC01\user\ADMIN\JEM\WINDOCS\FORMS\Recommendations & Disclosures - Island Palm Region - 10-10-19.doc

# ADDENDUM TO "AS IS" RESIDENTIAL CONTRACT FOR SALE AND PURCHASE AGREEMENT

This is an Addendum to the Purchase Agreement dated June ___, 2020 (the "**Agreement**"), between Jesse Chase as **Purchaser**, and Fred J. Dery, Chapter 7 Trustee for Joseph G. DuMouchelle and Melinda J. Adducci (Bankruptcy Case No. 19-54531 pending in the United States Bankruptcy Court for the Eastern District of Michigan) as **Seller**, with reference to the real property commonly known as 345 Cowry Court, Sanibel, FL 33957 (the "**Property**").

The Seller agrees to sell the Property to the Purchaser, subject to the following conditions:

(a) The Seller is signing this agreement as trustee in the bankruptcy case referenced above, and not individually.

(b) Title to the Property will be transferred by the Seller's execution of a "Trustee's Deed", subject to building and use restrictions, easements, ordinances, and regulations, if any.

(c) Sale of the Property, including all improvements and fixtures, shall be made on an "**AS IS, WHERE IS**" basis as of the date of closing without representation or warranty, express or implied, of any kind, nature, or description, including, without limitation, any warranty by description or of merchantability, habitability, usability, or of fitness for any purpose. The Seller shall not be required to inspect or test or report on the condition of the Property, or the operability of the Property, or the existence of any defects in the Property.

(d) By executing this agreement, the Purchaser acknowledge that the Seller under this agreement is a Chapter 7 Trustee of the above referenced estate and is not in physical possession of the Property, is without specific knowledge of the day to day condition of the Property and, therefore, cannot provide a disclosure statement.

(e) The Seller shall deliver to the Purchaser prior to closing a commitment for a policy of title insurance insuring the title in the condition required under this agreement with standard exceptions. Within seven days of receipt of the title commitment, the Purchaser shall provide the Seller with written notice of any objections. The

Seller shall have 30 days after receiving the written objections to remedy the claimed defects. If the Seller is unable or unwilling to remedy the defects or obtain title insurance insuring over the claimed defects within 30 days, the agreement shall terminate and any deposit shall be refunded to the Purchaser.

(f) The compensation of any real estate agent or broker arising out of this agreement is subject to the approval of the United States Bankruptcy Court.

(g) Due to the nature of the transaction, Seller will provide an ALTA owner's policy of title insurance, including a commitment prior to closing, issued through the title company of Seller's choosing, in the amount of the sale price, at Seller's expense. The loan policy of title insurance for Buyer's lender, if any, will also be issued through the same title company of Seller's choosing. Should Buyer choose to have the loan policy of title insurance issued through another title company, Buyer agrees to pay the premium for the owner's policy of title insurance, which shall be issued through the title company of Seller's choosing.

(h) The Seller, being the Chapter 7 bankruptcy trustee of the above-referenced estate, is does not know whether any residential structure on the Property was built prior to 1978 or if a lead-based paint hazard exists on the Property. The Seller or the Seller's agent will provide the Purchaser with a copy of the federal pamphlet entitled Protect Your Family From Lead in Your Home. The Purchaser has ten days from the Purchaser's execution of this agreement to have the Property inspected for lead-based paint. The Seller must receive notification from the Purchaser in writing (with a copy of the documents from the inspection) that the Purchaser desires to rescind this agreement because of the presence of lead-based paint hazard within seven days of the inspection. Upon a proper rescission by the Purchaser, this agreement shall terminate, and the Seller shall refund the Purchaser's deposit. If the Purchaser does not exercise the right of inspection under this paragraph, then the Purchaser waives the right to terminate this agreement because of the presence of a lead-based paint hazard.

(i) The Seller will provide access to the Property to inspectors, appraisers, and others engaged by the Purchaser when possible upon

reasonable notice. However, the Seller cannot and does not warrant, guaranty, or otherwise represent that access to the Property will occur. In the event that the Seller does provide access to such persons, such persons will operate on the Property at their own risks and the Seller does not warrant, guaranty, or otherwise represent that the Property is in any particular condition, including the absence of any unsafe condition which may or may not be open and obvious. Any inspectors, appraisers, and others engaged by Purchaser shall be bonded and/or insured in an amount acceptable to Seller and provide proof of the same to Seller prior to accessing the Property.

(j) By executing this agreement, the parties agree and acknowledge that any and all disputes arising under this agreement are subject to the exclusive jurisdiction of and shall be resolved by the United States Bankruptcy Court.

(k) The Seller reserves the right to recommend the rejection of the agreement, if the agreement later proves insufficient to yield a reasonable net recovery to the estate, or if a higher bid is received prior to the closing of the sale. In the event that a higher bid is received and accepted (after opportunity for Buyer to bid), Buyer shall be refunded his deposit and an expense reimbursement not to exceed $2,000.00 of actual costs incurred by Buyer in his due diligence. The costs of which shall be paid at closing with the subsequent Buyer.

(l) The sale shall be closed within fifteen (15) days following approval by the United States Bankruptcy Court of the agreement, as amended by this addendum and said approval becoming final and non-appealable. The Seller agrees to promptly request approval by the United States Bankruptcy Court of the sale. In no event will the closing occur prior to 45 days of acceptance of this offer.

(m)     The Seller shall have no obligation to sell the subject Property unless proceeds received from sale of the Property are sufficient to pay all valid and non-avoidable liens and encumbrances against the Property, the allowed exemptions (if any) claimed by the debtor, and all closing costs (including but not limited to real estate commissions). The agreement and addendum are subject to the provisions of 11 USC § 363(i).

(n) <u>Successors and assigns.</u> This agreement shall bind and benefit the parties and their successors, heirs, assigns, executors, administrators, and personal representatives.

(o) <u>Time is of the essence.</u> Time is of the essence in the performance of this agreement.

(p) <u>Amendment.</u> This agreement may not be amended except in writing by the person against whom enforcement of any waiver, change, or discharge is sought.

(q) <u>Severability.</u> Should any part of this agreement be found to be unenforceable, then the remaining provisions shall remain in full force and effect unless otherwise provided by the United States Bankruptcy Court.

(r) <u>Entire agreement.</u> The Agreement and any Addendum contain all the representations by each party to the other and expresses the entire understanding between the parties with respect to the contemplated transaction. All prior communications concerning the subject matter are merged into and replaced by this agreement.

(s) <u>Default.</u>

By Purchaser: In the event of default by the Purchaser of any terms in this agreement, the Seller may retain the deposit as liquidated damages pursuant to the default and elect to enforce the terms of this agreement in the United States Bankruptcy Court.

By Seller: In the event of default by the Seller of any terms in this agreement, the Purchaser may seek a refund of the entire deposit in full termination of this contract subject to the entry of an Order from the United States Bankruptcy Court.

(t) In the event of a conflict between this Addendum and the Purchase Agreement between the parties, this Addendum shall control.

(u) <u>Governing Authority.</u> **<u>NOTWITHSTANDING ANYTHING IN THIS ADDENDUM OR THE PURCHASE AGREEMENT</u>**

**SUBJECT TO THE APPROVAL OF THE UNITED STATES BANKRUPTCY COURT. IN THE EVENT THERE IS A CONFLICT BETWEEN A BANKRUPTCY COURT ORDER AND THIS ADDENDUM OR THE PURCHASE AGREEMENT BETWEEN THE PARTIES, THE BANKRUPTCY COURT ORDER SHALL SUPERCEDE THE AGREEMENT OF THE PARTIES TO THE EXTENT OF THE CONFLICT.**

Dated:_____       PURCHASER:

                                       _____

                                       Jesse Chase

Dated:_____7/2/20_____                 SELLER:

                                       _____

                                       Fred J. Dery, Chapter 7 Trustee in the
                                       matter of Joseph G. DuMouchelle and
                                       Melinda J. Adducci (Bankruptcy Case
                                       No. 19-54531), United States
                                       Bankruptcy Court for the Eastern
                                       District of Michigan, and not
                                       individually

**BETWEEN THE PARTIES TO THE CONTRARY, ANY DISPUTES ARISING UNDER THEM, THE SALE OF THE PROPERTY, AND DISTRIBUTIONS TO BE MADE FROM THE PROCEEDS OF THE SALE OF THE PROPERTY ARE SUBJECT TO THE APPROVAL OF THE UNITED STATES BANKRUPTCY COURT. IN THE EVENT THERE IS A CONFLICT BETWEEN A BANKRUPTCY COURT ORDER AND THIS ADDENDUM OR THE PURCHASE AGREEMENT BETWEEN THE PARTIES, THE BANKRUPTCY COURT ORDER SHALL SUPERCEDE THE AGREEMENT OF THE PARTIES TO THE EXTENT OF THE CONFLICT.**

Dated: _Jul 7, 2020_____    PURCHASER:

_Jesse Chase_____

Jesse Chase


Dated: _____    SELLER:


_____

Fred J. Dery, Chapter 7 Trustee in the matter of Joseph G. DuMouchelle and Melinda J. Adducci (Bankruptcy Case No. 19-54531), United States Bankruptcy Court for the Eastern District of Michigan, and not individually